851 F.2d 1290
 47 Fair Empl.Prac.Cas. 952,
47 Empl. Prac. Dec. P 38,244
Carolyn M. JORDAN, individually and on behalf of all persons
similarly situated, Plaintiffs-Appellees,
Sandra M. Pierce, individually and on behalf of all persons
similarly situated, Plaintiff-Intervenor, Appellees,
v.
John WILSON, Emory Folmar, and the City of Montgomery,
Alabama, Defendants-Appellants,
Charles Swindall, etc., et al., Defendants.
 No. 87-7398.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 8, 1988.
 
 Robert C. Black, Hill, Hill, Carter, Franco, Cole & Black, Randall Morgan, Montgomery, Ala., for defendants-appellants.
 Gregory B. Stein, Mobile, Ala., M. Wayne Sabel, J. Richard Cohen, Southern Poverty Law Center, Montgomery, Ala., for Sandra M. Pierce and Joyce S. Oyler.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before KRAVITCH, Circuit Judge, HENDERSON* and HENLEY**, Senior Circuit Judges.
 PER CURIAM:
 
 
 1
 John Wilson, the Chief of the Montgomery, Alabama Police Department, and Emory Folmar, the Mayor of the city of Montgomery, appeal the order of the United States District Court for the Middle District of Alabama finding them in civil contempt in a case growing out of charges of sex discrimination. We reverse.
 
 
 2
 This appeal adds another chapter to a saga that commenced over a decade ago. This case began in 1975 when Carolyn Jordan, representing a class of female police officer applicants, brought an action alleging sex discrimination in the hiring practices and policies of the Montgomery Police Department. In 1976, the district court found in favor of Jordan and the class and ordered the city and police officials to hire, assign, promote and compensate female and male police officers on an equal basis.
 
 
 3
 In 1983, Sandra M. Pierce intervened and claimed, inter alia, that the department practiced discrimination on the basis of sex in its promotion policies. Again, the district court agreed and, in an order dated November 17, 1986, held that the police department's promotion practices violated both Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., and 42 U.S.C. Sec. 1983. The district court also concluded that Pierce suffered "impermissible retaliation" as a result of her pursuit of the sex discrimination claims against the department. 649 F.Supp. 1038, 1062 (M.D.Ala.1986). On November 25, 1986, the court issued an injunction prohibiting the mayor, police chief and all officers within the police department from "in any way retaliating against ... Pierce or any other persons for bringing charges of sex discrimination against the City of Montgomery Police Department." Id. at 1064. The injunction also directed the appellants to "give ... Pierce ... such respect, support and encouragement as is given all other officers in the police department." Id. No appeal was taken from these orders.
 
 
 4
 Pursuant to an agreement of the parties, the district court entered another order on January 14, 1987, which granted Pierce relief from the discrimination previously found by the court in the order of November 17, 1986. As a part of the remedy, Pierce received a promotion to captain, retroactive to 1983, and back pay. The day after the district court entered this consent order, Mayor Folmar was asked by a television reporter if he thought Pierce was qualified to serve as a captain. He replied, "No, I don't think she's qualified to be a captain ... the only person who thinks she's qualified to be a captain is Judge Thompson, and he has no responsibility for her actions." In response to a similar question the police chief remarked, "Who is going to be responsible for her misjudgments and actions? Is it going to be Judge Thompson? No. It will be me. I will be legally responsible for what she does.... If we sneeze in front of her, she'll be back in federal court."
 
 
 5
 On January 16, 1987 Pierce filed a motion for civil contempt against Mayor Folmar and Chief Wilson for violating the injunction of November 25, 1986. After a hearing, the district court determined that these remarks by the mayor and the police chief constituted both retaliation and failure to show the "respect, support and encouragement" given to other officers. 662 F.Supp. 528. Accordingly, the district court held the appellants in civil contempt and awarded Pierce compensatory damages.[1] Mayor Folmar and Chief Wilson now appeal this contempt citation.
 
 
 6
 This court reviews the grant or denial of a motion for civil contempt under the abuse of discretion standard. Afro-American Patrolmen's League v. City of Atlanta, 817 F.2d 719, 723 (11th Cir.1987). Upon appellate review a civil contempt order may be upheld only if the proof of the defendant's contempt is clear and convincing.[2] Id. at 723. This burden of proof is more exacting than the "preponderance of the evidence" standard but, unlike criminal contempt, does not require proof beyond a reasonable doubt. United States v. Rizzo, 539 F.2d 458, 465 (5th Cir.1976).[3]
 
 
 7
 The district court first found that the statements by the mayor and the police chief had the "purpose and effect of retaliating against Pierce" for instigating the lawsuit. These comments, according to the district court, merely continued a retaliatory scheme that the court had declared illegal in its November 17, 1986 order and memorandum opinion. See 649 F.Supp 1060-62. This conclusion is not supported by clear and convincing evidence, and, therefore, the district court erred by holding the appellants in contempt for violating the injunction's prohibition on retaliation.
 
 
 8
 In order to prove retaliation under Title VII, a plaintiff initially must establish that 1) the employee's activity falls within the protection of Title VII, 2) the employee suffered an adverse employment decision and 3) a causal link exists between the protected activity and the detrimental employment decision. Donnellon v. Fruehauf Corp., 794 F.2d 598, 600-01 (11th Cir.1986). Obviously, Pierce's lawsuit is activity protected by Title VII. In determining whether this action was an adverse employment decision, the district court concluded that the statements "had the effect of demeaning [Pierce] before her fellow officers and the public, as well as demoralizing her, so as to substantially impair her ability to function as an officer." This conclusion is not supported by clear and convincing evidence. Pierce testified that she thought that such statements could undermine her authority. However, there is nothing in the record to indicate that Pierce's subordinates refused to obey her orders. Moreover, although Chief Wilson's comments clearly questioned Pierce's ability to perform the duties of a captain in the police department, he also acknowledged the validity of the district court's order and pledged to obey it. Mayor Folmar unequivocally testified that the chain of command in the police department is inviolate and insubordination would not be tolerated. In short, the evidence offered to show that Captain Pierce's authority had been compromised through retaliation was at best speculative and fell short of the clear and convincing standard.
 
 
 9
 The district court also determined that the mayor and police chief violated their affirmative duty under the injunction to show Pierce the "respect, support and encouragement" accorded to other captains. Indeed, the district court found the remarks "disrespectful," "undermining" and "demoralizing."
 
 
 10
 In its order citing the mayor and police chief for contempt, the district court noted that it entered the November 25, 1986 injunction to protect Pierce from further retaliation for bringing her lawsuit, as well as for the benefit of other class members. Thus the scope of the injunction is limited to the preservation of Pierce's rights, which had been vindicated through the November 17, 1986 order, and the rights of any class members who might bring discrimination charges in the future. We do not think the evidence is clear and convincing that the challenged statements infringed upon the protection of the injunction.
 
 
 11
 We have already determined that the evidence failed to show that these remarks had the effect of undermining Pierce's position as a captain in the department. We cannot, therefore, uphold the district court's determination that Pierce did not receive the support required by the injunction. There remains the question of whether the remarks violated the directive of the injunction to show respect and encouragement.
 
 
 12
 Understandably, Captain Pierce could have interpreted these remarks as personally insulting. However, to uphold the civil contempt citation given the scope of the injunction, she must show by clear and convincing proof that this alleged disrespect and lack of encouragement had either a deleterious impact on her position as a Montgomery police officer or a retaliatory effect against her or the class for filing the lawsuit. As discussed earlier, Pierce failed to demonstrate clearly that these statements constituted retaliation. Our reading of the record leads us to a similar conclusion when we consider whether Pierce received the respect and encouragement required by the injunction
 
 
 13
 As for "encouragement," the testimony at the hearing reflects that the department, under the direction of Mayor Folmar and Chief Wilson, were endeavoring to give Pierce all the training she requested to assume her responsibilities as captain. The mayor also testified that he frequently criticized other officers in the police department when he felt that their ability or performance was substandard. In light of this proof, we do not believe the evidence was so clear and convincing to warrant the conclusion that Pierce did not receive proper encouragement.
 
 
 14
 The district court indicated that these statements by Folmar and Wilson had the purpose and effect of unreasonably interfering with Pierce's work performance and work environment so as to diminish the respect of other officers toward her. See Meritor Savings Bank v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Again, the evidence, when viewed under the proper standard, belies this conclusion. Pierce offered practically no proof that her work performance had suffered; she only speculated that it would in the future. Nor does the evidence demonstrate a hostile or intimidating work environment after the statements were made. Rather, it shows that the police department was attempting to assist Pierce, through a training program, to assume her new role. The record simply does not contain sufficient evidence that, because of the remarks of the mayor and police chief, the department refused to treat Pierce as it would any other captain.[4]
 
 
 15
 Certainly, the mayor and police chief could have been more tactful in expressing their opinions about Pierce to the press.[5] Their statements only exacerbated an already bitter dispute. Undiplomatic behavior, however, does not necessarily constitute contempt of court. If anything, their criticism was directed more to the district court than to Captain Pierce. It primarily reiterated their displeasure with the court's original order finding discrimination. For these reasons, we are compelled to hold that the district court abused its discretion in adjudging the appellants in contempt of court.
 
 
 16
 Accordingly, the judgment of the district court is
 
 
 17
 REVERSED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 At the contempt hearing, Mayor Folmar and Chief Wilson agreed to post a memorandum throughout the police department which directed Captain Pierce's fellow officers to treat her with the respect befitting her rank. This memorandum issued January 22, 1987 and remained posted for at least fifteen days. The district court considered this gesture as a mitigating factor in computing the amount of Captain Pierce's damages
 
 
 [2]
 This clear and convincing proof must also demonstrate that 1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the order. United States v. Koblitz, 803 F.2d 1523, 1527 (11th Cir.1986)
 
 
 [3]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc ), this court adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981
 
 
 [4]
 The record is also devoid of evidence that these comments had a detrimental effect on members of the class who might bring charges of sex discrimination in the future
 
 
 [5]
 Mayor Folmar and Chief Wilson insist that their statements constitute protected speech under the first amendment, and, therefore, the contempt citation violates their constitutional rights. Because we hold that the injunction was not violated, we do not address the constitutional issues