[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 24 2000
THOMAS K. KAHN
CLERK

No. 98-5290

D. C. Docket No. 96-174CV-KMM

STUART J. MCGREGOR

Receiver-Appellee.

UNITED STATES FEDERAL TRADE COMMISSION,

Plaintiff-Appellee,

versus

TERI CHIERICO, MICHAEL CHIERICO,
et al.,

Defendants-Appellants,

WILLIAM BETHELL, et al.,

Defendants.

No. 99-13250

D.C. Docket No. 96-01754-CV-KMM

UNITED STATES FEDERAL TRADE COMMISSION,

Plaintiff-Appellee,

versus

TERI CHIERICO, MICHAEL CHIERICO,

Defendants-Appellants,

AMERICAN BUSINESS SUPPLIES, et al.,

Defendants.

---

No. 99-13868

D.C. Docket No. 96-01754-CV-KMM

UNITED STATES FEDERAL TRADE COMMISSION,

Plaintiff-Appellee,

versus

MICHAEL CHIERICO, AMERICAN BUSINESS SUPPLIES,
INC., et al.,

Defendants-Appellants,

CREATIVE BUSINESS CONSULTANTS, INC.,

2

Defendant.

Appeals from the United States District Court
for the Southern District of Florida

**(March 24, 2000)**

Before COX and DUBINA, Circuit Judges, and KRAVITCH, Senior Circuit Judge.

DUBINA, Circuit Judge:

This case arises from the district court's entry of three consecutive civil contempt orders against all or some of the defendants. Originally, the district court held all of the defendants in contempt for violating the terms of a Stipulated Final Judgment which resolved an underlying civil complaint brought by the Federal Trade Commission ("FTC") for violations of the FTC Act, 15 U.S.C. § 41 *et seq.* The subsequent two contempt findings resulted from the two non-corporate defendants' failure to comply with the previous contempt order(s). The defendants challenge all three contempt orders, as well as the assessment of damages for consumer redress. For the reasons discussed below, we affirm in part and vacate and remand in part.

## I. BACKGROUND

On June 26, 1996, the FTC initiated an action against Michael Chierico, American Business Supplies, Inc., Interstate Office Systems, Inc., and Nationwide Office Products, Inc. ("the defendants"). The FTC complaint alleged that these defendants engaged in a variety of deceptive acts and practices in connection with their nationwide telemarketing of photocopier toner and other office supplies, in violation of both Section 5 of the FTC Act, 15 U.S.C. § 45, and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101 *et seq*.

On June 28, 1996, the district court granted the FTC's request for an "Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of Receiver, and Other Equitable Relief" ("TRO"). (R1-20). On the same day the defendants received notice of the TRO, Michael Chierico's wife, Teri Chierico, who was not a named defendant at the time, attempted to withdraw $500,000 from an account held jointly with her husband. This attempted withdrawal violated the asset freeze. As a result, the FTC named Teri Chierico as a defendant in its amended complaint.

On November 13, 1996, the district court entered a Stipulated Final Judgment ("Final Judgment") which resolved the underlying FTC action. Michael Chierico signed the Final Judgment on his own behalf and on behalf of the corporate defendants, and Teri Chierico signed the Final Judgment on her own behalf. The Final Judgment prohibited the defendants, including Teri Chierico, from, *inter alia*, making

4

misrepresentations designed to trick prospective customers into accepting shipment of, or paying for, office products; from using misrepresentations, threats, or coercion to complete sales; and from shipping and billing for unordered merchandise. Moreover, the Final Judgment ordered the payment of $1 million to redress consumers injured by the fraud. In addition, the Final Judgment required the defendants to obtain a performance bond from a surety company before engaging in future telemarketing.

In January 1997, Michael Chierico and the corporate defendants paid the first bond installment and resumed telemarketing sales. On June 23, 1998, pursuant to a sealed motion by the FTC, the district court entered an Emergency Show Cause Order upon finding good cause to believe the defendants had violated and were likely to further violate the Final Judgment. The Emergency Order froze all of the defendants' assets and appointed a receiver to manage, wind down, and liquidate the corporate defendants.

On June 24, 1998, the defendants received service of the Emergency Order. The district court commenced a three-day evidentiary hearing the next day ("First Contempt Hearing"). At the conclusion of the hearing, the court entered its First Contempt Order which found that all of the defendants had violated the Final Judgment and held them in contempt. In order to "to coerce compliance with the Stipulated Final Judgment and to compensate for injuries resulting from defendants'

contumacious conduct," the district court (1) directed forfeiture of the $400,000 bond, (2) conveyed to the FTC all right, title, and interest in all of the defendants' assets previously frozen by the court's Emergency Order, and (3) directed Michael and Teri Chierico ("the Chiericos") to provide the FTC with a certified check in the amount of $2 million to be funded, if necessary, by all realizable equity in the couple's residence. (R4-120). The court's basis for taking substantially all of the Chiericos' property and assets was its finding that the fraudulent telemarketing practices had caused "at least" $7.2 million in consumer injury. The $7.2 million figure represents the corporate defendants' gross receipts from December 18, 1996, to June 23, 1998. Finally, the order enjoined all of the defendants from telemarketing in the future.

In an effort to comply with the First Contempt Order, the Chiericos attempted to raise the $2 million by listing their home for sale and applying through a mortgage lender/broker to refinance their home. Despite these efforts, the Chiericos failed to make the required $2 million payment by July 31, 1998.

On August 5, 1998, the FTC filed another Emergency Show Cause Motion. After conducting an evidentiary hearing, the district court concluded that the Chiericos' failed efforts to sell or refinance their home did not excuse their noncompliance with the First Contempt Order. Therefore, the district court held the Chiericos in contempt ("Second Contempt Order") for their failure to "make all

6

reasonable efforts" to comply with Section II.B.3 of the First Contempt Order, which required payment of $2 million to the FTC.

To ensure payment of the $2 million, the Second Contempt Order required the Chiericos to (1) prepare loan applications for a second mortgage and supply those to the receiver by August 19, 1998, (2) obtain a firm commitment for a loan to be secured by the realizable equity in their home by September 11, 1998, and (3) close a loan secured by their home by September 25, 1998. The court's order provided that, if the Chiericos failed to complete any of the above steps, they would be required to transfer marketable title to their home to the FTC. If they failed to transfer title, the order provided that the Chiericos would be "arrested and taken into custody and incarcerated until such time as they can demonstrate that they have complied with [the] order." (R5-169-3).

On August 21, 1998, the Chiericos filed timely notices of appeal, challenging the district court's First and Second Contempt Orders. Both the district court and this court denied the Chiericos' Motion to Stay the orders pending appeal.

Pursuant to the Second Contempt Order, the Chiericos provided the receiver with an acceptable loan application, but the receiver failed to secure a loan. Therefore, the order directed the Chiericos to convey title to their home to the FTC. On June 25, 1999, the FTC filed a third Show Cause Motion, and the district court conducted an

7

evidentiary hearing on that motion. Despite the receiver's inability to procure a loan against the Chiericos' home, the district court rejected the Chiericos' argument that it was impossible to comply with the Second Contempt Order and concluded that the Chiericos' only means of compliance was to deed their home to the FTC or go to jail. Because signing the deed would have mooted the underlying appeals from the First and Second Contempt Orders, upon advice of counsel, the Chiericos refused to sign the deed.

After the hearing, the district court entered a written order finding the Chiericos in contempt for the third time ("Third Contempt Order") for failing "to close on a loan against the realized equity in the [home] and [failing] to transfer marketable title in the [home] to the Receiver." (2nd Supp. R3-242-2). Accordingly, the district court ordered that "Michael and Teri Chierico shall be committed to the custody of the United States Marshal . . . until such time as they purge themselves of contempt by transferring marketable title . . . to the Receiver." (2nd Supp. R3-242-2).

Two days after the district court issued its Third Contempt Order, the Chiericos filed timely notices of appeal, as well as an Emergency Motion for Stay Pending Appeal in this court. A panel of this court[1] construed the Emergency Motion for Stay as a Motion for Release Pending Appeal and granted it, thereby releasing the

---

[1]*McGregor v. Chierico*, Nos. 98-5290 & 99-13250 (11th Cir. filed Sept. 3, 1999).

Chiericos from incarceration. This court consolidated the appeal from the Third Contempt Order with the initial appeal from the First and Second Contempt Orders.

In the present appeal, the defendants challenge the district court's finding that they violated the Final Judgment. They also challenge the district court's finding that their contumacious conduct caused over $7.2 million in "actual damage" to consumers. Accordingly, the Chiericos challenge the district court's order that they forfeit substantially all of their assets to the FTC in order to fund the payment of consumer redress. In addition, the Chiericos assert that the district court's Second and Third Contempt Orders relating to their failure to liquidate the equity in their home should be vacated because the orders violate Florida's constitutional homestead exemption.

## II. STANDARD OF REVIEW

This court reviews the grant or denial of a motion for civil contempt under the abuse of discretion standard. *See Jordan v. Wilson*, 851 F.2d 1290, 1292 (11th Cir. 1988) (per curiam). Upon appellate review, a civil contempt order may be upheld only if the proof of the defendant's contempt is clear and convincing. *See id.* "This clear and convincing proof must also demonstrate that 1) the allegedly violated order was

valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the order." *Id.* at 1292 n.2.

### III . DISCUSSION

A. Teri Chierico

Teri Chierico argues that the district court abused its discretion by finding that she violated the Final Judgment. She alleges that, in evaluating the FTC's charges, the district court simply lumped together all of the defendants without considering the weight of the evidence as it applied to each individual and corporate defendant. She also argues that the FTC did not offer clear and convincing evidence that she, in particular, engaged in telemarketing activities and by this omission, failed to prove that she violated the Final Judgment.[2] Consequently, Teri Chierico asserts that we should vacate the district court's contempt order.

As a preliminary matter, we recognize that, with limited exceptions, active participation in telemarketing following the entry of the Final Judgment is a prerequisite to the district court's finding that the defendants violated the Final Judgment. Close analysis of the evidence reveals that Teri Chierico did not actively

---

[2]On appeal, the FTC does not argue against the merits of Teri Chierico's challenge to the sufficiency of the evidence presented against her at the First Contempt Hearing. Rather, the FTC contends that Teri Chierico has waived her right to appeal because of default. We reject this argument.

participate in the telemarketing business. She did not serve as an officer, shareholder, director, or employee of any of the defendant corporations. In fact, aside from her marriage to Michael Chierico, Teri Chierico's only relation to the telemarketing business derives from her status as a shareholder and employee of the non-defendant corporation, Chierico Enterprises, Inc. Chierico Enterprises owns the building which housed Michael Chierico's businesses. Teri Chierico served as a secretary and property manager and collected rent payments from the defendant corporations on behalf of Chierico Enterprises. Although Chierico Enterprises undeniably took money from the defendant corporations, there is no allegation that Chierico Enterprises engaged in any wrongdoing. Consequently, Teri Chierico's relationship with Chierico Enterprises should not impact upon the contempt charges levied against her.[3]

Despite the lack of any business relationship between Teri Chierico and her husband's telemarketing businesses, the FTC insists that Teri Chierico was "part and parcel of this operation." (1st Supp. R2- 363). In conflict with this assertion, the FTC acknowledges that it presented minimal evidence at the First Contempt Hearing relating to Teri Chierico. The FTC only produced evidence that she occasionally visited her husband's telemarketing office with their children and "that's it." "That's

_____

[3]Teri Chierico's relationship with Chierico Enterprises is relevant to the FTC's allegation that she became an officer of the corporation and according to the Final Judgment, was required to report this fact to the FTC as it constitutes a change in her employment status. *See* Section III.A.3 infra.

the only thing she does in this operation." (1st Supp. R2- 363). None of the facts presented by the FTC provide clear and convincing evidence that Teri Chierico engaged in telemarketing activities and, by doing so, violated the terms of the Final Judgment. (1st Supp. R2-363). In our view, the FTC included Teri Chierico in these contempt proceedings, not because she poses a threat to the innocent public, but because, as Michael Chierico's wife, she received some money from her husband's businesses. This fact alone is not sufficient to support a finding of contempt. After a careful analysis of each basis for the contempt finding, we conclude that the district court erred in finding Teri Chierico in contempt for violating the Final Judgment.

1. The Bond Requirement

Teri Chierico asserts that she never directly engaged in the telemarketing business after the entry of the Final Judgment and, thus, was not required to satisfy the bond requirement. The Final Judgment prohibited the defendants from engaging in telemarketing without first obtaining a performance bond.[4] The bond, executed in favor of both the FTC and the defendants' telemarketing customers, ensured the availability of reparations to customers harmed by the defendants' telemarketing

---

[4]Initially a $100,000 bond was required, with a provision raising it to $200,000 after six months, and then $400,000 after 18 months.

practices. The bond requirement applied only to those defendants who participated in telemarketing *after* the Final Judgment. Thus, although other defendants decided to re-enter the telemarketing business, a defendant who did not re-enter the telemarketing business after the entry of the Final Judgment was not bound to fulfill the bond requirement.

In its original Show Cause Motion, the FTC alleged that Teri Chierico played a substantial role in her husband's post-Final Judgment telemarketing activities, yet the FTC failed to produce any evidence during the First Contempt Hearing to support this allegation. As a result, we conclude that Teri Chierico was never responsible for posting any of the bonds described in the Final Judgment because the bond requirements apply only to those defendants who engaged in telemarketing. Thus, the district court erred in finding that Teri Chierico violated the bond requirements.

2. Prohibited Telemarketing Activities and Maintenance of Business Records

The district court's First Contempt Order finds that the "defendants' acts and practices in connection with the sale of toner violates the following injunctive provisions of the Final Order:  Section I.A, subsections 1-6, Section I.B, subsections 1-4, Section I.B, and Section I.E." (R4-120-2). All of these sections prohibit certain business activities in relation to telemarketing, such as misrepresentation and violation

13

of the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310. In addition, the district court found that Teri Chierico violated Sections VII.B and D of the Final Judgment which require that the defendant maintain certain business records "in connection with the advertising, offering for sale, sale, or distribution of any goods by means of telemarketing." (R4-100-20). Given that the FTC presented no evidence that Teri Chierico participated in any way in telemarketing, there is no basis for the district court's finding that she violated these sections of the Final Judgment. Therefore, we conclude that the district court erred in finding that Teri Chierico violated the above cited provisions of the Final Judgment.

3. Change in Employment Status

Section VI.A of the Final Judgment creates affirmative obligations that apply independent of any resumed telemarketing activity. Section VI.A required Teri Chierico to report to the FTC any change in her employment status. The FTC did not present any evidence at the First Contempt Hearing as to a change in Teri Chierico's employment status, rather it first raised the charge (inappropriately) during closing argument. (1st Supp. R2-365). Even if we accept the FTC's allegation, the burden rests on the complaining party, here the FTC, to show by clear and convincing evidence that the alleged contemnor acted in violation of the court's order. *See*

14

*Jordan*, 851 F.2d at 1292. Thus, the district court's finding is unsupported by the evidence and, as such, constitutes an abuse of discretion.

4. Consumer Redress

In civil contempt proceedings, a party guilty of contempt may be required to compensate those injured by its contempt.[5] *See In re DuPont De Nemours & Co. (Benlate Litigation)*, 99 F.3d 363, 368 (11th Cir. 1996). The district court predicated its assessment of redress for consumer injury against Teri Chierico upon a finding that she engaged in fraudulent telemarketing after signing the Final Judgment. (R4-120-2). Teri Chierico appeals this portion of the order on the basis that she never engaged in telemarketing activity and, accordingly, could not have caused any consumer injury.

With no evidence to support its allegation that Teri Chierico engaged in telemarketing activity, the FTC argues alternatively that, "in any event," Teri Chierico should be held liable for the payment of consumer redress because she is a "conduit . . . a sort of fallback position for Michael Chierico" whereby he can protect his ill-

---

[5]District courts are afforded wide discretion in fashioning an equitable remedy for civil contempt. *See United States v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999). The sanctions may serve to either (1) coerce the contemnor to comply with a court order, or (2) compensate a party for losses suffered as a result of the contemnor's act. *See id; see also United States v. United Mine Workers of America*, 330 U.S. 258, 304 (1947) ("Where compensation is intended, a fine is imposed . . . . Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy.") (footnote omitted).

begotten assets. (1st Supp. R2-361). Pursuant to this reasoning, the FTC requested that the district court order the forfeiture of "all of the assets in this case – boat, bank accounts, everything," regardless of whether they belong to Michael Chierico or Teri Chierico. While this argument certainly deepens the pocket from which the FTC can collect, it ignores the fact that a court cannot use its contempt power to acquire assets owned by innocent individuals. Fundamental fairness requires that Teri Chierico not be held liable for consumer redress when she did not participate in any acts which caused harm to consumers.

That said, we must now determine what effect Teri Chierico's innocence will have upon the validity of the district court's order that the Chiericos forfeit jointly held property, in particular, their family home. The district court's order mandates that the defendants supply to the FTC a certified check for $2 million "to be used for payment of consumer redress." (R4-120-4). The order indicated that the funds for the check "shall be supplied through the conversion of any realizable equity in the defendants' home . . . ." (R4-120-4). The family home referenced in the First Contempt Order is owned by Michael and Teri Chierico as tenants by the entirety.

This court has already determined that severance of a tenancy by the entirety for the purpose of taking the property owned by a guilty spouse, works a partial taking of the innocent spouse's property. *See United States v. One Single Family Residence,*

16

894 F.2d 1511, 1515 (11th Cir. 1990). The partial taking results from the fact that "[a] tenant by the entireties holds an indivisible right to own and occupy the entire property." *Havoco of Am., Ltd. v. Hill*, 197 F.3d 1135, 1139 (11th Cir. 1999) (internal quotations omitted). To convert that right to own and occupy into a tenancy in common would effect an unlawful taking. *See One Single Family Residence*, 894 F.2d at 1516.

Although *One Single Family Residence* is a forfeiture case, and *Havoco of America, Ltd.* is a bankruptcy case, the reasoning of those cases may be readily extended to the civil contempt context. *See* 197 F.3d at 1139; 894 F.2d at 1512. As tenants by the entireties, this court cannot extract Michael Chierico's rights in the family home without affecting Teri Chierico's rights. Because the district court erred in holding Teri Chierico in contempt, it would be unjust to force her to relinquish any innocently held property rights. Thus, in effect, protection of Teri Chierico's interest in the family home renders Michael Chierico's interest in the home unreachable by the court's contempt power.

In conclusion, we must vacate the portion of the district court's First Contempt Order which requires the conversion of Teri Chierico's realizable equity in the family home for the provision of consumer redress. Vacating this aspect of the First

Contempt Order necessarily impacts upon the Second and Third Contempt Orders,[6] which hold both Michael and Teri Chierico in contempt for their failure to comply with this limited element of the First Contempt Order. Accordingly, the Second and Third Contempt Orders must be vacated as well.[7]

B. Michael Chierico

Michael Chierico[8] presents all of the same issues on appeal as Teri Chierico, but in contrast to the case against his wife, we conclude that the FTC presented ample evidence at the First Contempt hearing of Michael Chierico's misconduct in connection with his telemarketing. Consequently, Michael Chierico's appeal from the district court's finding that he violated the Final Judgment is without merit.[9]

---

[6]The government argues that we lack jurisdiction to review the Third Contempt Order on the theory that the order is non-final and therefore, any appeal at this point constitutes an impermissible interlocutory appeal. The Third Contempt Order is the direct result of the Chiericos' failure to comply with the Second Contempt Order. Our decision to vacate the Second Contempt Order moots the sole ground relied upon by the district court to hold the Chiericos in contempt for a third time. Thus, the Third Contempt order is essentially unenforceable. Accordingly, we vacate the Third Contempt Order without reaching the jurisdictional question.

[7]Because the tenancy by the entirety effectively protects Michael Chierico's interest in the family home, we need not determine the difficult issue of whether the district court properly used its contempt power to override the homestead exception in Florida's Constitution.

[8]The three corporate defendants join Michael Chierico in his appeal from the First Contempt Order. After thorough consideration, we deem their arguments uncompelling.

[9]Michael Chierico also appeals from Section III of the First Contempt Order which permanently enjoins him from "engaging or participating, whether directly or indirectly," in any capacity, in telemarketing as defined by the Final Judgment and from engaging in the sale of office

Nonetheless, Michael Chierico's appeal from the district court's assessment of the amount of consumer redress deserves some discussion.

The district court ordered forfeiture of substantially all of Michael Chierico's assets to fund payment of consumer compensation pursuant to the court's finding that the defendants' contumacious conduct resulted in at least $7,282,404 in consumer injuries. Michael Chierico appeals the damages award as excessive. The district court's ability to order payment of consumer redress is limited to actual damages. *See City of Miami,* 195 F.3d at 1298 ("[A] court's civil contempt power is measured solely by the requirements of full remedial relief.")(internal quotations omitted).

"An award of damages in a civil contempt proceeding requires proof of both the fact of injury to the aggrieved party and the amount of damages the aggrieved party has suffered." *Graves v. Kemsco Group, Inc.*, 864 F.2d 754, 756 (Fed. Cir. 1988). The standard of proof for the amount of damages, once contempt has been established by clear and convincing evidence, is unclear. At least three other circuits have held that the injury need only be proven by a preponderance of the evidence. *See In re General Motors Corp.*, 110 F.3d 1003, 1018 (4th Cir.1997); *Reliance Ins. Co. v. Mast Constr.*

---

supplies via direct mail. (R4-120-4). Contrary to Michael Chierico's contention, the permanent ban was not a contempt sanction, but a modification of Section II of the Final Judgment. Section II's bond requirement and injunctive provisions were intended to ensure Michael Chierico's compliance with the law and protect consumers from further injury. In light of Michael Chierico's continued fraudulent practices after the entry of the Final Judgment, the district court did not abuse its discretion in modifying Section II of the Final Judgment.

*Co.*, 159 F.3d 1311, 1318 (10th Cir. 1998); *Graves,* 864 F.2d at 755 (applying Seventh Circuit law); *but see Gregory v. Depte*, 896 F.2d 31, 40 (3d.Cir.1990) (Becker, J., concurring and dissenting) ("civil contempt awards . . . must be vacated if they appear to us excessive, or unsupported by clear and convincing evidence"). We agree with the Fourth Circuit that, "[s]ince [the court] has already found by clear and convincing evidence that harm has occurred, the damages issue should be treated no differently than any other run-of-the-mill civil action." *In re General Motors Corp.*, 110 F.3d at 1018. Thus, in a civil contempt action, we hold that damages must be proven by a preponderance of the evidence.

At the First Contempt Hearing, the FTC bore the burden of proving the amount of consumer injury by a preponderance of the evidence. Following the FTC's recommendation, the district court valued the amount of damages according to the gross sales generated by the defendant companies during the relevant 18-month period.[10] Michael Chierico contends that gross sales is not the appropriate measure of damages because not all of his customers were misled and because his customers received some benefit from the toner.

___

[10]Although the First Contempt Order assessed $7.2 million in damages, in actuality, the court limited actual recovery to roughly $3 million. The discrepancy between the $7.2 million assessed in damages and the order of forfeiture of approximately $3 million in assets results from the fact that the district court could not have (logically) ordered the Chiericos to pay the full $7.2 million because they clearly did not have sufficient assets to make such a payment.

## 1. Extent of the Misrepresentation

Michael Chierico asserts that the district court's award of consumer redress in the amount of gross sales was inappropriate because the FTC did not prove actual reliance on false and misleading statements for each of his customers. He argues instead that the court should limit its assessment of consumer redress to those losses specifically proven by the FTC.

The inherent equitable powers of the federal courts authorize the district court to order payment of consumer redress for injury caused by Michael Chierico's contumacious conduct. *See Granfinanciera v. Nordberg*, 872 F.2d 397, 400-01 (11th Cir. 1989). In the underlying action, the sanctions imposed by the district court would have been authorized by Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), which provides a remedy, specifically in the form of injunctive relief, for consumers harmed by "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45 (a)(1). Federal courts have used their inherent equitable power to justify the use of non-injunctive equitable sanctions as permissible remedies under section 13(b). *See FTC v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314 (8th Cir. 1991) ("Where Congress allows resort to equity for the enforcement of a statute, all the inherent equitable powers of the district court are available for the

proper and complete exercise of the court's equitable jurisdiction, unless the statute explicitly . . . limits the scope of that jurisdiction."); *accord FTC v. Gem Merchandising Corp.*, 87 F.3d 466, 470 (11th Cir. 1996) (holding that "section 13(b) permits a district court to order a defendant to disgorge illegally obtained funds"). The analysis which applies to consumer remedies issued under section 13(b) is instructive in the case before us because the remedy for Michael Chierico's contemptuous conduct is closely akin to the remedy for the statutory violation which lies at the heart of this action.

Liability under the FTC Act is predicated upon certain misrepresentations or misleading statements, coupled with action taken in reliance upon those statements. Proof of individual reliance by each purchasing customer is not a prerequisite to the provision of equitable relief needed to redress fraud. *See FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993). "A presumption of actual reliance arises once the [FTC] has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product." *Id.* at 605-06; *see also Security Rare Coin,* 931 F.2d at 1316.

The FTC presented evidence that Michael Chierico's businesses routinely used deceptive calling scripts to induce the purchase of toner.[11] In most cases, the telemarketer made credible and persuasive misrepresentations concerning the existence of a preexisting relationship between Michael Chierico's businesses and the purchasing company. The evidence provided by the FTC creates a presumption that the fraudulent statements of Michael Chierico's telemarketers induced customers to accept and pay for unordered toner. Given this presumption, the FTC need not prove subjective reliance by each customer, as "[i]t would be virtually impossible for the FTC to offer such proof, and to require it would thwart and frustrate the public purposes of FTC action." *Security Rare Coin*, 931 F.2d at 1316. Because it is clear from the record that Michael Chierico failed to successfully rebut the presumption of fraud raised by the FTC's evidence, all that is left for us to review is the district court's valuation of the losses sustained by Michael Chierico's customers.

2. Amount of Refund Needed to Redress Injury

---

[11]The *modus operandi* of Michael Chierico's telemarketers was to call businesses, and using pretense, learn the name of an employee authorized to make toner purchases, as well as the make and model of the businesses' copiers. The telemarketers would then make a second call to each business and, using the information gained during the first call, trick whoever answered the telephone into believing that the business had already ordered toner. Thus, the second call sounded like a confirmation of an already placed order when, in actuality, no such order had been placed. Supporting this pattern, the FTC offered evidence that 95% of the customers who complained said that they had not ordered the toner they received.

23

Michael Chierico challenges the district court's $7.2 million valuation of the damages caused by his fraudulent telemarketing. He argues that the FTC's evidence supports, at best, several thousand dollars in damages. Michael Chierico bases this argument on the existence of a full refund policy, coupled with the FTC's failure to show that the complaining businesses did not receive toner, or did not use the toner they received. We review the district court's assessment of contempt sanctions for an abuse of discretion. *See Jove Eng'g, Inc. v. Internal Revenue Serv.*, 92 F.3d 1539, 1559 (11th Cir. 1996).

"[T]here can be no 'equity' in a compensatory award except as it provides a fair equivalent for some loss." *Gregory*, 896 F.2d at 35 (quoting *National Drying Mach. Co. v. Ackoff*, 245 F.2d 192, 195 (3d Cir. 1957)). While it may be true that the defrauded businesses received a useful product, and though less likely, they may have even received the product at a competitive price,[12] the central issue here is whether the seller's misrepresentations tainted the customer's purchasing decisions. *See Figgie*, 994 F.2d at 606. We agree with the Ninth Circuit in *Figgie* that in cases like this, "[t]he fraud in the selling, not the value of the thing sold, is what entitles consumers

---

[12]To support the claim that his prices were fair, Michael Chierico points to the fact that an overwhelming majority of the products sold were sold at prices which had been incorporated into the Final Judgment. He also argues that the existence of his company's "beat price" policy, whereby it would sell its product at a lower price than any of its customers claimed could be obtained from a different vendor, supports a finding that consumer injuries were limited to only a few specific cases.

in this case to full refunds . . . for each [product] that is not useful to them." *Id*.[13]

Accordingly, we affirm the district court's assessment of damages in the amount of gross sales.

## IV. CONCLUSION

For the reasons set forth in this opinion, we vacate the First Contempt Order as it pertains to Teri Chierico. In all other respects, we affirm the First Contempt Order. We vacate the Second and Third Contempt Orders entered against the Chiericos and remand this case for further proceedings consistent with this opinion.

**AFFIRMED in part, VACATED in part, and REMANDED.**

---

[13]All of the consumer witnesses presented by the FTC testified that they normally receive toner without additional charge through their copier service contracts. Thus, the toner sold by Michael Chierico afforded no benefit to these customers. Michael Chierico failed to offer any evidence to rebut the presumption that the vast majority of his customers had no need for the toner they received.