[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 17, 2007
THOMAS K. KAHN
CLERK

No. 98-8454-EE

GEORGIA POWER COMPANY,

Petitioner-Cross-Respondent,

versus

NATIONAL LABOR RELATIONS BOARD,

Respondent-Cross-Petitioner.

_____

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,
AFL-CIO, CLC Local No. 84,

Intervenor.

--------------------------
On Application for Enforcement of an Order
of the National Labor Relations Board
--------------------------


BEFORE: MARCUS and HILL, Circuit Judges, and ADAMS,* District Judge.

MARCUS, Circuit Judge:


_____

* Honorable Henry Lee Adams, Jr., United States District Judge for the Middle District of
Florida, sitting by designation.

Now pending before the Court is a Petition for Adjudication of Civil Contempt, in which the National Labor Relations Board ("Board") alleges that Georgia Power Company ("Georgia Power") is in contempt of this Court's March 8, 1999 Judgment in this matter. After reviewing the Board's contempt petition, we directed Georgia Power to file an Answer and directed the Board to provide this Court with copies of any documentation which it believed supported the allegations of its Petition for Civil Contempt. On December 12, 2006, we issued an ORDER TO SHOW CAUSE why Georgia Power Company should not be held in civil contempt of this Court's judgment in Georgia Power Co. v. NLRB, 176 F.3d 494 (11th Cir. 1999) (table), aff'g & enf'g, Georgia Power Co., 325 N.L.R.B. 420 (1998). After reviewing the materials submitted by the parties, we DENY the Petition for Adjudication of Civil Contempt.

This action arises from an unfair-labor-practice complaint filed with the Board alleging that Georgia Power unilaterally changed working conditions for employees represented by the International Brotherhood of Electrical Workers Local 84, AFL-CIO-CLC ("Union"). More specifically, the Union claimed that Georgia Power unilaterally, that is, without collective bargaining, modified the Other Post-Retirement Benefits ("OPRB"), including future retirees' life and medical benefits, of current employees, in violation of Sections 1 and 8(a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, 158(a)(5). The Board found that

2

Georgia Power's unilateral decision to limit the company-paid portion of the premiums for its future retirees' OPRB, in the form of medical and life insurance benefits, violated Sections 1 and 8(a)(5) of the NLRA. As a result, Georgia Power was directed, <u>inter alia</u>, to cease and desist from making unilateral changes to its bargaining unit employees' OPRB without providing notice of the proposed changes and an adequate opportunity to the Union to bargain about those changes, as well as from interfering with, restraining, or coercing its employees in the exercise of rights guaranteed to them by Section 7 of the NLRA. Specifically, the Board's order directed that Georgia Power shall:

1. Cease and desist from

(a) Making unilateral changes in bargaining unit employees' OPRB without providing notice of the proposed changes and adequate opportunity for the Union to bargain about those changes.

(b) In any like or related manner interfering with, restraining, or coercing its employees in the exercise of rights guaranteed them by Section 7 of the Act.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) On request, bargain collectively with International Brotherhood of Electrical Workers Local 84, AFL-CIO-CLC as exclusive representative of the employees in the appropriate bargaining unit described in article II, section 2 of their collective-bargaining agreement (memorandum of agreement) and, if an understanding is reached, embody that understanding in a signed contract.

3

(b) Restore OPRB to the pre-April 21, 1995, level.

Georgia Power Co., 325 N.L.R.B. at 427. On March 8, 1999, this Court entered a decree affirming and enforcing the Board's order. Georgia Power Co. v. NLRB, 176 F.3d 494 (11th Cir. 1999) (table).

Following entry of our judgment in 1999, from 2000 to 2001, Georgia Power and the Union engaged in good-faith negotiations, the scope of which included discussion of the bargaining-unit employees' OPRB. The parties reached an impasse during their 2000-2001 negotiations, after which Georgia Power implemented its "last, best and final offer" based on the company's interpretation of "the impasse rule," which provides that "following good-faith negotiations, . . . a party generally may take unilateral action with respect to a mandatory subject of bargaining over which impasse has been reached." NLRB v. McClatchy Newspapers, Inc., 964 F.2d 1153, 1155 (D.C. Cir. 1997) (per curiam) (Edwards, J., concurring); see also NLRB v. Bancroft Mfg. Co., 635 F.2d 492, 494 (5th Cir. Unit A Jan. 1981) ("'Impasse' within the meaning of the federal labor laws presupposes a reasonable effort at good-faith bargaining which, despite noble intentions, does not conclude in an agreement between the parties." (quotation marks omitted)).[1] The Union filed no

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all cases decided by the Fifth Circuit, including both Units A and B, prior to October 1, 1981.

unfair-labor-practice complaint challenging the foregoing implementation pursuant to Georgia Power's interpretation of the impasse rule.

Thereafter, on September 30, 2004, Georgia Power distributed a memorandum to its employees in which it announced two changes to current employees' OPRB: (1) a change in the method for coordination of benefits between the Georgia Power Medical Plan and other insurers, and (2) the implementation of a premium contribution for retirees after they turned 65. Those changes became effective on January 1, 2005. Along with that memorandum, Georgia Power provided a document entitled "Highlights of Changes to the Southern Company Services, Inc. Healthcare Plan." In addition to describing the changes to the Medical Plan, the memorandum stated that "Future changes to retiree health care premiums for current active employees may be announced at the discretion of the Plan Administrator." The Union filed no unfair-labor-practice complaint challenging the foregoing changes.

By letter dated October 21, 2004, the Union advised Georgia Power that it opposed the proposed changes to the Medical Plan and indicated its view that the issue was properly a subject of bargaining and must be negotiated with the Union.

In an April 6, 2005 letter in response, Georgia Power advised the Union that: (1) because the proposed changes affected only retirement benefits, they were not subject to negotiations with the Union; (2) even if the changes were subject to

negotiations, the Union had already accepted those changes by not objecting in 2002, when the changes were implemented, or in 2003, when the Union agreed to allow its members to participate in the Blue Cross/Blue Shield medical plan, or both; and (3) after the parties reached an impasse during their 2000-2001 good-faith negotiations, the company implemented its "last, best and final offer."

Over a year later, on July 17, 2006, the Board filed this Petition for Adjudication of Civil Contempt. The Board asks that Georgia Power be found in contempt of this Court's March 8, 1999 Judgment, and that Georgia Power be ordered to purge itself of the contempt by, among other things, rescinding the 2004 changes, making whole employees who have been affected by the changes, posting notices of the contempt finding, and payment of the Board's costs and expenses. The Board also says this Court should direct Georgia Power to make immediate payment of $50,000 into the District Court for the Northern District of Georgia's registry as a "conditional fine" to be remitted upon performance of the other proposed purging actions.

We will make a finding of civil contempt -- that is, willful disregard of the authority of this Court -- only upon a showing that the alleged contempt is clear and convincing. See McGregor v. Chierico, 206 F.3d 1378, 1383 (11th Cir. 2000); NLRB v. Crockett-Bradley, Inc., 598 F.2d 971, 975 (5th Cir. 1979). "This burden of proof

6

is more exacting than the 'preponderance of the evidence' standard but, unlike criminal contempt, does not require proof beyond a reasonable doubt." Jordan v. Wilson, 851 F.2d 1290, 1292 (11th Cir. 1988) (per curiam). The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order. McGregor, 206 F.3d at 1383 (emphasis added). Our disposition of the instant Petition concerns the second element of the standard for a finding of civil contempt.

"In determining whether a party is in contempt of a court order, the order is subject to reasonable interpretation, though it may not be expanded beyond the meaning of its terms absent notice and an opportunity to be heard." Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1296 (11th Cir. 2002). Moreover, we will construe any ambiguities or uncertainties in such a court order in a light favorable to the person charged with contempt. NBA Properties, Inc. v. Gold, 895 F.2d 30, 32 (1st Cir. 1990). Our focus in a civil contempt proceeding "is not on the subjective beliefs or intent of the alleged contemners in complying with the order, but whether in fact their conduct complied with the order at issue." Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990).

Here, the Board argues that Georgia Power's participation in the ultimately unsuccessful negotiations over the OPRB and its right to unilaterally change OPRB was insufficient to permit the implementation of changes to the OPRB or of the unilateral ability to make future changes, pursuant to the impasse rule. In short, given the procedural posture of the instant application, we need not, and do not, reach the Board's ultimate argument concerning the scope of the impasse doctrine, since our inquiry in a civil contempt proceeding is narrowly proscribed and encompasses only whether Georgia Power's post-judgment conduct, including its interpretation of the impasse rule after the unsuccessful negotiations, in fact, complied with our March 8, 1999 Judgment in this matter.

The clear and unambiguous language of the Board's order, which we affirmed and enforced in our March 8, 1999 Judgment, prohibited Georgia Power from "[m]aking unilateral changes in bargaining unit employees' OPRB without providing notice of the proposed changes and adequate opportunity for the Union to bargain about those changes." Georgia Power Co., 325 N.L.R.B. at 427. The undisputed facts show that the Union necessarily had notice of the proposed changes to the current employees' OPRB, by virtue of the Union's participation in the 2000-2001 negotiations, which resulted in an impasse. Moreover, there is no dispute that the Union had the opportunity to participate, and in fact did participate, in negotiations

over the changes to current employees' OPRB. It was only after the parties participated in good-faith negotiations that Georgia Power implemented its "last, best and final offer," pursuant to which Georgia Power made the 2005 Plan amendments the Board now challenges. The Board's argument that the NLRA prohibits Georgia Power's implementation, pursuant to the impasse doctrine, of the "last, best and final offer" is misplaced since our inquiry is limited to whether the "four corners" of this Court's judgment, in clear and unambiguous terms, prohibited Georgia Power's conduct, and not whether that conduct was a violation of the NLRA in the first instance.[2]

---

[2] The parties apparently dispute whether the 2000-2001 negotiations included discussions about the general right sought by Georgia Power to unilaterally make changes in the future to current employees' OPRBs. Regardless of whether Georgia Power gave the Union notice and the opportunity to bargain over this general right, however, the plain terms of the Board's decision, which we enforced, Georgia Power Co., 176 F.3d 494, did not address that issue. See Doe v. Bush, 261 F.3d 1037, 1062 (11th Cir. 2001) ("[A]ny ambiguities in a judgment are to be construed in favor of the alleged contemnor." (citing NBA Props., Inc., 895 F.2d at 32)). Therefore, even if the Board is correct that Georgia Power did not provide the Union with notice and an opportunity to bargain over the general right to make future unilateral changes, that does not warrant holding Georgia Power in civil contempt. We offer no opinion on the legality of Georgia Power's conduct under the NLRA or whether an unfair-labor-practice complaint lies based on that conduct, as that is a matter for the Board, not the courts, to adjudicate in the first instance. Cf. Computer Sciences Corp. v. NLRB, 677 F.2d 804, 807-08 (11th Cir. 1982) (dismissing Board's petition for contempt where Board had not adjudicated underlying unfair-labor-practice complaint; "Reasons akin to those underlying the doctrine of exhaustion of administrative remedies persuade us that it is ill-advised to resolve these highly factual and close issues before the agency possessing expertise in these matters has passed upon the question . . . ."). On this record, a judicial determination of the legality of Georgia Power's conduct under the NLRA is better postponed until there has been agency action. Id. at 807.

On the record before us, we cannot conclude that the Board has established, by clear and convincing evidence that Georgia Power's actions -- Georgia Power's actions, of course, would encompass its interpretation of the impasse rule in light of our March 8, 1999 Judgment -- were based on an unreasonable interpretation of the clear and unambiguous directive of our order enforcing the Board's decision in this matter. Accordingly, we **DENY** the Petition for Adjudication of Civil Contempt.

We **DENY AS MOOT** Georgia Power's Motion to Dismiss, the Board's Motion for Summary Adjudication, and Georgia Power's Cross-motion for Summary Adjudication.

We **GRANT** Georgia Power's Motion for leave to file a Reply Brief.