[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12382
_____

D.C. Docket No. 9:06-cv-80226-DMM


FEDERAL TRADE COMMISSION,

Plaintiff - Appellant,

versus

GARDEN OF LIFE, INC.,
JORDAN S. RUBIN,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 15, 2013)

Before MARCUS, HILL and SILER,[*] Circuit Judges.

MARCUS, Circuit Judge:

_____

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Appellant Federal Trade Commission ("FTC") moved the U.S. District Court for the Southern District of Florida to order Appellee Garden of Life ("GOL"), a dietary supplement manufacturer, to show cause why it should not be held in contempt of a Stipulated Final Order and Permanent Injunction ("injunction") that barred GOL from making misrepresentations in its advertisements. The FTC contended that GOL violated the terms of the injunction in its advertisements for its calcium supplements RAW Calcium and Grow Bone System, and its omega-3 supplement Oceans Kids. At issue in this case is whether the district court abused its discretion when it denied the FTC's motion. We affirm the district court's decision except with regard to one of the FTC's claims -- that GOL misrepresented the six-month results of a bone density study in an advertisement for Grow Bone System -- and remand for the district court to address that claim in the first instance.

I.

This case arises in the wake of a 2006 settlement between the FTC and Garden of Life concerning advertising misrepresentations. The district court entered an order and injunction embodying that settlement. Section 1 of the injunction barred unsubstantiated claims that GOL's products treated an extensive list of ailments, including cancer, high cholesterol, and cardiovascular disease, unless it had competent and reliable scientific evidence for those claims. The

2

section further barred unsubstantiated claims "[a]bout the absolute or comparative health benefits, efficacy, performance, safety, or side effects of such product." Section 2 of the injunction barred misrepresentations of "the existence, contents, validity, results, conclusions, or interpretations of any test or study." The definitions section of the injunction defined "[c]ompetent and reliable scientific evidence" to "mean tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results." The definitions section notably did not define what § 1 meant by "absolute or comparative health benefits."

In order to comply with the agreement, GOL retained a consulting firm, ISS, to evaluate the scientific evidence supporting potential advertising claims. Dr. Steven Weisman, the head of ISS, is a clinical pharmacologist with twenty years of experience in evaluating advertising claims.

In 2009, GOL introduced three products: RAW Calcium and Grow Bone System, both calcium supplements, and Oceans Kids Chewables, an omega-3 supplement for children. The crux of the controversy surrounds various advertisements GOL used to promote these new products.

3

GOL included numerous claims on the product packaging of its Oceans Kids supplement, including that the product "help[ed] support" a child's "[b]rain [d]evelopment," "[c]ognitive [f]unction," "[e]ye [h]ealth & [v]ision," and "[p]ositive [m]ood & [b]ehavior." Meanwhile, GOL advertised RAW Calcium and Grow Bone System by touting the fact that those products are derived from marine algae and contain multiple vitamins or minerals that assist in calcium uptake. The product's packaging included the claim that, "Until now, Calcium supplementation, at best, helped to slow down the rate of bone loss." In addition, GOL published a magazine article explaining Raw Calcium and Grow Bone System's advantages over rock-source calcium supplements. Finally, a print advertisement, since withdrawn by GOL, stated that "[i]n a six-month randomized, open label human clinical study," participants who "consumed the ingredients in the Grow Bone System" for "just six months . . . experienced a significant average INCREASE in bone mineral density of 2.8%" and those who were highly compliant with the supplementation and exercise regimen "experienced an INCREASE in bone mineral density by an amazing 3.7%." GOL withdrew the last advertisement upon discovering that it misstated the results of the clinical study involved, based apparently on a mistake made by ISS. The study itself had found increases of half those amounts (1.4% rather than 2.8%) in the six-month period

4

and then had annualized the results by doubling them. Prior to releasing all these advertisements, GOL relied on ISS reports to substantiate the relevant claims.

According to the FTC, these advertising claims were inadequately supported by competent and reliable scientific evidence. Therefore, in August 2011, the FTC filed a motion with the district judge who had originally issued the injunction and requested that he order GOL to show cause why it should not be held in civil contempt. Along with its motion, the FTC presented declarations from two experts, Dr. David Bellinger and Dr. Connie Weaver, who stated that GOL lacked sufficient competent and reliable scientific evidence to support its claims. To rebut Bellinger's and Weaver's declarations, GOL submitted a declaration from Weisman explaining the support for GOL's advertising claims and his critiques of Bellinger's and Weaver's findings. Weisman did not dispute that his firm had made a mistake with regard to the results of the bone density study referenced in GOL's Grow Bone System advertisements.

In February 2012, the district court denied the motion. The district court rejected the FTC's Oceans Kids claim because it considered the dispute between Bellinger and Weisman to be a battle of the experts. Based on Weisman's declaration, the district court found that the FTC had failed to prove by clear and convincing evidence that GOL violated the injunction.

The court then turned to the issues surrounding GOL's calcium supplements. The FTC claimed that GOL violated § 1's "comparative health benefits" clause by advertising Grow Bone System as superior to other supplements. In addition, the FTC claimed that GOL violated § 2 of the injunction because GOL's advertisements misrepresented the results of a bone density study and because that study was, in any case, insufficiently rigorous.

The district court first determined that GOL's calcium supplement advertisements did not violate § 1 as a matter of law. According to the court, the term "comparative" referred to "a claim that individuals who take a product will notice an improvement in their health compared to those who do not" and did not cover product superiority claims that GOL's products were better than a competitor's products. The court also determined that, even if the injunction did cover superiority claims, GOL's advertisements fell short of stating superiority claims. As for the § 2 claim, the district court rejected the FTC's argument that the clinical study was insufficiently rigorous. However, the district court did not expressly address the advertisement's false statement that the reported six-month increases were in fact annualized figures that doubled the study's six-month findings.

The FTC appealed.

## II.

We review the denial of a motion to show cause why a party should not be held in contempt only for abuse of discretion. Thomas v. Blue Cross & Blue Shield Ass'n, 594 F.3d 814, 821 (11th Cir. 2010). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." Id. (internal quotation marks omitted).

"Construction of a consent judgment is . . . a question of law subject to de novo review." Turner v. Orr, 759 F.2d 817, 821 (11th Cir. 1985). In cases involving the construction of an injunction by the district court that entered it, however, we defer to the district court's interpretation as long as it is reasonable. See Ala. Nursing Home Ass'n v. Harris, 617 F.2d 385, 388 (5th Cir. 1980) ("Great deference is due the interpretation placed on the terms of an injunctive order by the court who issued and must enforce it."); accord Com. Union Ins. Co. v. Sepco Co., 918 F.2d 920, 924 (11th Cir. 1990).[1]

"[A] finding of civil contempt" requires "a showing that the alleged contempt is clear and convincing." Ga. Power Co. v. NLRB, 484 F.3d 1288, 1291 (11th Cir. 2007). "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

unambiguous; and (3) the alleged violator had the ability to comply with the order." Id.

## A.

There was no abuse of discretion in the district court's decision to deny the motion as to the FTC's § 1 claims. The FTC maintains that GOL violated § 1 of the injunction by failing to substantiate advertising claims that Oceans Kids benefitted children's cognitive development, mental focus, and mood and behavior. The FTC's primary support for its position is Bellinger's declaration, in which he opined that GOL relied on insufficiently rigorous studies, or studies of populations other than healthy children over the age of two, and that, therefore, there was not enough substantiation for the Oceans Kids claims. GOL in turn submitted a declaration from Weisman describing the various studies upon which he relied and contesting Bellinger's report. Specifically, Weisman pointed to four studies that did test the effect of omega-3 intake on young children, along with two dozen others that tested different populations, e.g., children with attention deficit disorder or malnutrition. Although acknowledging Bellinger's criticism of the studies' methodologies, Weisman adhered to his opinion that the statements on the Oceans Kids packaging had sufficient scientific support.

The district court in substance viewed this as a battle of the experts and found that the FTC "failed to establish by clear and convincing evidence that

8

[GOL] violated Section One of the injunction by making the . . . representations with respect to Oceans Kids." As the court put it, "[t]o find that GOL violated the terms of the Order solely because another well-respected expert defines 'brain development' differently or disagrees with certain aspects of a study's 'trial design' would require this Court to read additional requirements into the Consent Decree."

The finding that the FTC failed to meet its burden based on conflicting expert testimony is a quintessentially factual determination, and therefore we would have to find it clearly erroneous to upset the district court's decision. See, e.g., St. Martin v. Mobil Exploration & Producing U.S., Inc., 224 F.3d 402, 408 (5th Cir. 2000) ("The district court admitted testimony from experts on both sides, and was entitled to weigh the evidence presented by each . . . . It did not commit clear error in choosing one explanation over another where both were properly admitted."). The FTC's argument on appeal is that the district court abused its discretion, and that the finding was clearly erroneous, because Bellinger was the only one qualified to speak to the Oceans Kids' claims. Weisman was not an expert in the field of children's cognitive and behavioral development and thus was unqualified to evaluate the relevant studies. The FTC pins this argument on the definition of "competent and reliable scientific evidence" in the injunction, which requires the opinion of a "professional[] in the relevant area." According to the

9

FTC, Weisman did not qualify as a professional in the relevant area because the relevant area should have been construed narrowly to include only experts in child cognitive and behavioral development.

However, the FTC fails to provide any support for this narrow reading of what it means to be a professional in the relevant area. The FTC's citations merely beg the question by reciting the idea that a claim must be substantiated based on, for instance, "what evidence would in fact establish such a claim in the relevant scientific community." FTC v. Direct Mktg. Concepts., Inc., 624 F.3d 1, 8 (1st Cir. 2010) (internal quotation marks omitted). The salient question, however, is at what level of generality we must define the "relevant area" or "relevant scientific community." Since the district court did not contravene any law on this issue, it did not abuse its discretion by treating Weisman as a qualified expert.

What the FTC is really attacking is the district court's implicit interpretation of its own injunction. But we defer to that interpretation as long as it is reasonable, Ala. Nursing Home Ass'n, 617 F.2d at 388; Com. Union Ins. Co., 918 F.2d at 924, and interpreting "professionals in the relevant area" to mean experts in medicine or pharmacology in general rather than specialists in the given medical subspecialty is reasonable. We are unpersuaded by the assertion that Weisman is unqualified to interpret the results of medical studies. He is a clinical pharmacologist, with a Ph.D. in Pharmacology and twenty years of experience in evaluating scientific

evidence to substantiate advertising and label claims. Much of his professional life has been spent analyzing the health effects of various products. Since Weisman provided expert testimony that GOL did have competent and reliable scientific evidence to substantiate its claims, and the district court credited that testimony, we cannot discern clear error in the district court's finding.

The FTC's other set of § 1 claims concerns GOL's calcium supplement advertisements. The FTC argued to the district court that GOL had made unsubstantiated superiority claims about its calcium supplements RAW Calcium and Grow Bone System. However, the district court read § 1.J of the injunction, which bars unsubstantiated claims regarding "comparative health benefits," as not covering superiority claims comparing different products. As we have noted, the district court that entered the injunction is entitled to substantial deference in the interpretation of its own injunction. Moreover, as GOL points out, we are obliged to "construe any ambiguities or uncertainties in such a court order in a light favorable to the person charged with contempt." Ga. Power Co., 484 F.3d at 1291. Since the district court's interpretation of its injunction was reasonable, we are obliged to affirm this portion of the district court's order as well.

The relevant provision of the injunction forbids GOL from making a claim about "the absolute or comparative health benefits, efficacy, performance, safety, or side effects of such product" without competent and reliable scientific evidence.

11

The ambiguity in this provision lies in the meaning of the term "comparative health benefits." The FTC insists the language could not be clearer, and that a claim about comparative health benefits is one comparing GOL's product to other manufacturers' products. The district court, on the other hand, explained in its order that "comparative" referred to "a claim that individuals who take a product will notice an improvement in their health compared to those who do not." In other words, the district court interpreted its injunction to cover use vs. non-use comparisons and not to cover "comparisons between [GOL's] products and a competitor's products."

This interpretation is reasonable. The word "comparative" standing alone is susceptible to multiple meanings -- a comparison between before-use and after-use health effects in the same individual, a comparison between use and non-use health of different individuals, or a comparison between using GOL calcium and using a different manufacturer's calcium. The district court's interpretation does no violence to the injunction's plain language and preserves the meaning of all the terms in the provision. An "absolute" claim about a health benefit, for instance, would be something akin to, "This product provides all the calcium your body needs." In contrast, a "comparative" claim, by the district court's lights, would be something like, "People who take Grow Bone System experience a three percent increase in bone density." Similar examples can be constructed for "efficacy"

12

("This product works!"), "performance," ("This product works well!"), "safety" ("This product is absolutely safe for all age groups."), and "side effects" ("This product has no meaningful side effects.").

In fact, there are some reasons to find the district court's interpretation not only reasonable but preferable to the FTC's interpretation. For one thing, as GOL points out, all the other parts of § 1 target highly specific claims regarding the effects of GOL's products on named ailments, such as claims "[t]hat such product reduces or helps lower users' blood cholesterol levels." Notably, all of these claims relate to either absolute or comparative health benefits as the district court interpreted the term "comparative," and none of them address claims that a GOL product was superior to a competitor's product. When a court considers a list of specific terms that is then followed by a more general term, such as § 1.J of the injunction, the canon of ejusdem generis applies to resolve ambiguities in meaning. Under that canon, "when general words follow the enumeration of particular classes, the general words should be construed as applying only to things of the same general class as those enumerated." Edison v. Douberly, 604 F.3d 1307, 1309 n.4 (11th Cir. 2010); see Eastern Air Lines, Inc. v. McDonnell Douglas Corp., 532 F.2d 957, 988-89 & n. 90 (5th Cir. 1976). In this case, § 1 of the injunction has nine subparts that cover a series of absolute claims (for example, that a GOL product will treat cancer) and comparative claims (for example, that a GOL

13

product lowers blood cholesterol levels). Applying ejusdem generis to the term "comparative health benefits" in § 1.J, it is logical to assume that a § 1.J claim must be of the same species as the claims specifically forbidden by the rest of § 1. Thus, ejusdem generis supports interpreting "comparative health benefits" in a way that excludes superiority claims, which are an entirely distinct type of claim from those covered by § 1's first nine subparts.[2]

The FTC cites as contrary persuasive authority FTC v. Lane Labs-USA, Inc., 624 F.3d 575 (3d Cir. 2010). While the facts of Lane Labs are similar to the present case, there are several substantial differences that render that case inapposite. The language of the order at issue in Lane Labs was arguably broader than the injunction in this case. That injunction covered any representations regarding the effect of Lane Labs' product and "any other health benefits of such product." Id. at 578. Moreover, the Third Circuit's opinion gave no indication that the order against Lane Labs contained a long list of specific prohibitions, as the injunction against GOL does. Thus, the principle of ejusdem generis had no application, whereas in this case we must read the broad language of § 1.J in light

---

[2] Indeed, there is a more specific phrase for the claims that the FTC now characterizes as "comparative" within the meaning of § 1. In its brief, the FTC uses the term "superiority claim" to describe claims that a product is better than competitors' products, and this phrase seems to be a term of art. E.g., Kraft, Inc. v. FTC, 970 F.2d 311, 314 (7th Cir. 1992) (evaluating claim that Kraft's "process cheese food slices . . . are nutritionally superior to imitation slices"); Am. Home Prods. Corp. v. Johnson & Johnson, 577 F.2d 160, 162 (2d Cir. 1978) (reviewing a district court injunction of "advertising of certain product superiority claims of 'Anacin' over 'Tylenol'"). Notably, the injunction does not use the term "superiority claim."

of the scope of the preceding narrowing clauses. Finally, unlike in this case, the district court in Lane Labs did not deny the motion based on its interpretation of the injunction's language as categorically excluding superiority claims. Rather, the district court found Lane Labs' testimony more persuasive and concluded that Lane Labs had substantially complied with the order. See id. at 580-81. The Third Circuit reversed that factual finding as "not plausible in view of the entire record," id. at 584, a decision that did not confront the deference due to a district court's legal interpretation of an injunction that it entered.

The district court did not abuse its discretion by interpreting its own injunction as not covering superiority claims. In light of this determination, we have no occasion to address the district court's alternative reasons for denying the motion -- for instance, the finding that GOL's advertisements did not even make superiority claims -- and affirm this portion of the district court's decision.

B.

We must vacate and remand, however, the portion of the district court's order concerning the FTC's § 2 claim. This claim pertained to a print advertisement for Grow Bone System that stated that "[i]n a six-month randomized, open label human clinical study," participants who "consumed the ingredients in the Grow Bone System" for "just six months . . . experienced a significant average INCREASE in bone mineral density of 2.8%." All parties

15

concede this advertisement misstated the results of the relevant bone density study, which had shown only a 1.4 percent increase in six months. The FTC made two distinct attacks on this advertisement in the district court. First, the FTC claimed that GOL's misrepresentation, whether or not it was inadvertent, violated § 2. Second, the FTC claimed that GOL was not entitled to rely on the study at all because it was methodologically flawed and unscientific. The district court addressed only the second argument and did not explain why it did not order GOL to show cause with regard to the first.

GOL argues that this matter is moot because the advertisement has already been withdrawn. By GOL's lights, there is no need for a civil contempt sanction to compel compliance with the injunction because it has already brought itself into compliance. However, "sanctions in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC, 478 U.S. 421, 443 (1986) (internal quotation marks omitted). While the need for coercive sanctions vanishes when the contumacious conduct ceases, a court retains the power to assess compensatory fines in civil contempt. See Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am., 609 F.2d 165, 170 (5th Cir. 1980) (if a court could not assess fines after contumacious conduct ceased, it "would invite lightning-

16

quick breaches of court orders, timed to make it impossible for the court to act during the breach"). Obviously, compensatory sanctions are not moot simply because the injurious conduct ends.

Alternatively, GOL urges us to treat the district court's order as implicitly resolving both of the FTC's arguments. At oral argument, GOL suggested that the district court must have attached an element of willfulness to the act of misrepresentation or at the very least have interpreted § 2 as not imposing strict liability on GOL for inadvertent misrepresentations. However, after thorough review of the district court's order, we cannot see any indication that it considered the FTC's first argument. The court denied the FTC's § 2 claim by stating that GOL was never required "to conduct its own studies to authenticate its claims." This conclusion goes to the FTC's complaint about the study's reliability but does not address the factual misrepresentation; even if GOL was not required to conduct its own studies, § 2's plain language still required GOL to report truthfully the results of studies it cited. The court further stated that the FTC's "real qualm with GOL's statements appears to rest on GOL's reliance on a" fatally flawed study. But again, this was only half of the FTC's claim. The other half of the claim was that GOL's advertisement said 2.8 percent in six months when the study said 2.8 percent in a year.

17

The district court may have understood its injunction as only barring willful or reckless misrepresentation, as GOL supposes. Or the district court may have felt that the offense was too minor to trigger the exercise of its contempt power. We decline to speculate as to the district court's reasons in the absence of any explanation of those reasons or to decide the merits of the claim ourselves. "'A district court abuses its discretion when it misconstrues its proper role [or] ignores or misunderstands the relevant evidence . . . .'" Jove Eng'g, Inc. v. IRS, 92 F.3d 1539, 1546 (11th Cir. 1996) (quoting Arlook v. S. Lichtenberg & Co., 952 F.2d 367, 374 (11th Cir. 1992)). As to the § 2 claim, the district court's order did not speak to the relevant evidence: the misstatement in the Grow Bone System advertisement, which the FTC included as an exhibit and referenced in its briefs. Therefore, we lack an adequate record to review its decision as an appellate court and will remand in order to give the district court the opportunity to address the FTC's claim in the first instance.

In short, we affirm the district court's denial of the FTC's motion as to the alleged § 1 violations and vacate and remand its denial of the FTC's motion as to the alleged § 2 violation. On remand, the district court should specifically address whether GOL's false description of the bone density study's results constituted a violation of § 2.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

18