[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-15001
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-01641-SCJ

GEORGE MATTHEWS,
NINA MATTHEWS,

Plaintiffs-Appellants,

versus

STATE FARM FIRE & CASUALTY COMPANY,

Defendant,

ANDREW J. BECKER,
DAVID JASON MERBAUM,

Interested Parties-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 2, 2020)

Before BRANCH, FAY and HULL, Circuit Judges.

PER CURIAM:

This appeal stems from a 2010 suit that the plaintiffs-appellants, George Matthews and Nina Matthews ("the Plaintiffs"), filed against their homeowners insurance company, State Farm Fire and Casualty Company ("State Farm"). The appellees, David Merbaum and Andrew Becker ("the M&B Attorneys") initially represented the Plaintiffs but eventually withdrew due to a fee dispute. In 2012, the Plaintiffs' State Farm suit ended when this Court affirmed the district court's entry of summary judgment in favor of State Farm.

Several years later, in 2019, the Plaintiffs filed a pro se motion to hold the M&B Attorneys in civil contempt for their alleged failure to follow a 2010 court order about the fee dispute in the State Farm suit. The Plaintiffs also filed a motion to recuse District Court Judge Steve Jones from presiding over the contempt proceedings based on his previous involvement in the State Farm suit and his receipt of an "extrajudicial document," namely a grievance the Plaintiffs filed about Judge Jones with the Georgia Attorney General. District Court Judge Jones denied both motions. The Plaintiffs now appeal those rulings. After review, we conclude the district court properly denied both motions and affirm.

# I. BACKGROUND[1]

## A.    Plaintiffs' 2010 State Farm Suit & M&B Attorneys' First Motion to Withdraw

In April 2010, the Plaintiffs filed their suit against State Farm for breach of contract and bad faith based on its alleged failure to pay the full loss amount caused by tree damage to their home.  While the Plaintiffs initiated the suit in state court, State Farm removed it to federal court on the basis of diversity jurisdiction. The case was assigned to District Court Judge Willis Hunt.

The Plaintiffs retained M&B Attorneys Merbaum and Becker who were with the Merbaum Law Group, PC ("Merbaum Law").  According to their original Attorney-Client Contract, the Plaintiffs were to pay the M&B Attorneys on an hourly basis for all work performed in the State Farm matter, as well as a $1,500 retainer and any out-of-pocket expenses.

During the discovery phase of the litigation, communications between the Plaintiffs and the M&B Attorneys broke down, and the M&B Attorneys filed their first motion to withdraw from representation.  The Plaintiffs objected to the withdrawal.

---

[1]The M&B Attorneys object to documents in the Plaintiffs' Appendix that were not submitted to the district court.  We agree and decline to consider those documents.  See 11th Cir. R. 30-1(a) (providing that, generally, "under no circumstances should a document be included in the appendix that was not submitted to the trial court").

**B.    District Court's October 25, 2010 Oral Order**

At an October 25, 2010 hearing, the parties notified the district court of their inability to reach a fee agreement and their disagreements on how to proceed in the suit against State Farm.  The parties explained that the M&B Attorneys began representing the Plaintiffs pursuant to an hourly fee agreement.  After the retainer and first bill were paid, however, the Plaintiffs asked to switch to a contingency basis.  The parties failed to reach a new contingency fee agreement, and the Plaintiffs' outstanding bill of almost $20,000 for legal services rendered thus far went unpaid.  At one point, the M&B Attorneys sent the Plaintiffs a letter offering to settle all amounts owed for only $500 in out-of-pocket fees if the Plaintiffs would consent to the Attorneys' withdrawal ("Settlement Letter").

District Court Judge Hunt stressed his preference that the parties reconcile, stating that the parties needed to "agree on contingency, work that out, and see if you can't take a few depositions and at least have mediation and see where you are there."  Judge Hunt instructed that, if the parties could not come to a resolution by the end of the week, they should notify the court.  If unable to reconcile, Judge Hunt stated that he would grant the M&B Attorneys' motion to withdraw on the conditions stated in the Settlement Letter, that "aside from some out-of-pocket costs—there would be no additional charge to the plaintiffs."  Judge Hunt reiterated, "[b]ut I do want you to have this meeting between the parties to see if

4

there isn't some way you can get along."  Judge Hunt instructed the M&B

Attorneys to report back by October 29, 2010.[2]

On October 28, 2010—just three days after the hearing—the parties

executed an Amendment to their original Attorney-Client Contract ("the

Amendment").  The Amendment stated that: (1) the Plaintiffs agreed to pay $7,500

for all legal work performed through October 27, 2010; (2) all work performed

after October 27 would be billed at an hourly rate of $225; and (3) the Plaintiffs'

$1,500 retainer would be applied to their prior bill.

On November 5, 2010, based on the parties' reconciliation, the M&B

Attorneys withdrew their first motion to withdraw.

## C.    M&B Attorneys' Second Motion to Withdraw & Summary Judgment

Subsequently, the Plaintiffs incurred additional attorney's fees, which they

failed to pay.  On December 23, 2010, the M&B Attorneys filed their second

motion to withdraw.  Over the Plaintiffs' objection, Judge Hunt granted the M&B

---

[2]Judge Hunt's instruction went as follows:
> . . . I want you to agree . . . that the Matthews[es] come by your office before the end of this week, give them at least an hour's time, talk to them, and if at the end of that time you cannot get out, let us know.  I will then relieve the lawyers of their responsibility on the conditions set forth in their letter, and that is that there be no additional—aside from some out-of-pocket costs—there would be no additional charge to the plaintiffs.  And then they can go and get a lawyer maybe who will agree to take it on a contingency and move forward.
>
> But I do want you to have this meeting between the parties to see if there isn't some way you can get along.

The hearing minutes indicated that the court "ordered [the parties] to make another attempt to reconcile their differences."

Attorneys' motion to withdraw and stayed discovery while the Plaintiffs sought new counsel. The order said nothing about the parties' fee arrangement or the conditions in the Settlement Letter.

In March 2011, the case was reassigned to District Court Judge Steve Jones. State Farm moved for summary judgment, which the now pro se Plaintiffs opposed.

In 2012, Judge Jones granted State Farm's summary judgment motion on all claims, dismissed the Plaintiffs' suit, and awarded State Farm its costs. The Plaintiffs pro se appealed, and this Court affirmed. Matthews v. State Farm Fire & Cas. Co., 500 F. App'x 836, 837, 843 (11th Cir. 2012).

## D.    M&B Attorneys' 2015 Lawsuit Against Plaintiffs in State Court

In 2015, Merbaum Law sued the Plaintiffs in state court to recover their outstanding bills. Plaintiff George Matthews received a discharge in bankruptcy court and was dismissed from the state court suit in 2017. In August 2017, the state court entered judgement in favor of Merbaum Law and against Plaintiff Nina Matthews for $39,902.66 in attorney's fees and expenses plus interest and late fees. Nina Matthews filed unsuccessful challenges to the state court judgment.

## E.    Plaintiffs' 2019 Motions for Contempt and Recusal in Federal Court

In July 2019—six years after this Court affirmed the district court's judgment in favor of State Farm—the Plaintiffs filed a motion for civil contempt

6

against the M&B Attorneys and a motion to recuse District Court Judge Jones from presiding over the contempt proceedings.

In their motion for contempt, the Plaintiffs alleged that the M&B Attorneys intentionally violated District Court Judge Hunt's October 25, 2010 oral order. The Plaintiffs claimed that, at the October 25 hearing, Judge Hunt ordered the M&B Attorneys to either (a) reconcile with the Plaintiffs by creating a contingency contract or (b) withdraw from the case with no additional charges beyond $500 in out-of-pocket costs under the terms of their Settlement Letter.  The Plaintiffs asserted that the M&B Attorneys violated that oral order by withdrawing from the case and by making numerous attempts to collect attorney's fees beyond the $500 out-of-pocket fees.[3]  The Plaintiffs additionally requested that the district court remove the state court and bankruptcy judgments against the Plaintiffs, impose sanctions and a "coercive daily fine" against the M&B Attorneys, reprimand them, and consider filing for their disbarment.

In their motion to recuse and supporting affidavits, the Plaintiffs asserted that District Court Judge Jones "pose[d] a threat to an objective ruling" on their contempt motion for two reasons.  First, the Plaintiffs claimed that, in the

---

[3]The Plaintiffs alleged that the M&B Attorneys: (1) filed a notice of attorney lien in state court for $18,251.90 plus interest for legal fees in the State Farm litigation; (2) sent the Plaintiffs an email demanding $20,000 and threatening further litigation; (3) filed a claim in George Matthew's bankruptcy proceeding and obtained an order for $19,928.83; (4) brought a breach-of-contract action in state court and obtained a judgment for $39,902.66; and (5) filed a garnishment in state court stating that Nina Matthews owed them $57,226.20.

underlying State Farm suit, Judge Jones allowed State Farm to admit allegedly fabricated documents and relied upon those documents in granting summary judgment for State Farm.

Second, the Plaintiffs claimed they sent Judge Jones an "extrajudicial source" of information, to wit their grievance filed with the Georgia Attorney General.  The grievance accused Judge Jones of relying on the allegedly fabricated documents and of failing to punish State Farm's counsel.  The grievance also stated that the M&B Attorneys withheld information and documents from the Plaintiffs and described the Attorneys' alleged violations of District Court Judge Hunt's October 25 oral order.  The Plaintiffs attached their grievance and the Georgia Attorney General's rejection of the grievance.  The Plaintiffs argued that "Judge Jones's ruling history over this case and preconceived opinions that may have been developed after being sent the grievance . . . would cause anyone . . . to reasonably doubt [his] impartiality to preside over this contempt hearing."

Opposing the Plaintiffs' contempt motion, the M&B Attorneys emphasized that they had not violated any order.  The M&B Attorneys argued that: (1) Judge Hunt's October 25 oral order merely instructed the parties to attempt to reconcile, which they did by executing the Amendment to the Attorney-Client Contract; and (2) the Plaintiffs were abusing the court system in an attempt to avoid execution of the state court judgment.

8

**F.      District Court's Order Denying Plaintiffs' Motions**

In November 2019, District Court Judge Jones denied the Plaintiffs' motions to recuse and for contempt. As to the recusal motion, Judge Jones determined that the Plaintiffs' grievance, alone, did not warrant recusal and stated that he "approache[d] each of [his] cases with integrity, professionalism, and impartiality."

As to the contempt motion, Judge Jones found no evidence that the M&B Attorneys did not comply with Judge Hunt's October 25 oral order, "which was for the parties to essentially make an attempt at reconciliation." Judge Jones found that the Amendment to the Attorney-Client Contract and the withdrawal of the M&B Attorneys' first motion to withdraw indicated that the parties had reconciled. Therefore, the latter part of Judge Hunt's order that was contingent on the parties' failure to reconcile never became effective. While recognizing that the reconciliation later fell apart and that the M&B Attorneys successfully filed a second motion to withdraw, Judge Jones determined that these circumstances were irrelevant because they "were not within the contingency of" Judge Hunt's October 25 oral order.

This is the Plaintiffs' appeal.

## II. MOTION TO RECUSE

On appeal, the Plaintiffs argue that Judge Jones abused his discretion by failing to recuse himself based on: (1) his previous involvement in the case; and

9

(2) his receipt of the Plaintiffs' "extrajudicial" grievance complaining of his and the M&B Attorneys' conduct.[4]  The Plaintiffs assert that these circumstances called Judge Jones's impartiality into question.

Recusal is governed by two statutes—28 U.S.C. §§ 144 and 455.  Under § 144, a party may seek the presiding judge's recusal by filing a "timely and sufficient affidavit" showing that the judge "has a personal bias or prejudice either against him or in favor of any adverse party."  28 U.S.C. § 144.  The party "must allege facts that would convince a reasonable person that bias actually exists."  Christo v. Padgett, 223 F.3d 1324, 1333 (11th Cir. 2000).  The party's properly pleaded facts in his § 144 affidavit must be taken as true.  Id.

Under § 455, a judge must recuse himself when "his impartiality might reasonably be questioned" or when "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(a), (b)(1).  In reviewing a judge's decision not to recuse, we ask whether an objective, disinterested, and fully informed lay observer

---

[4]This Court reviews a judge's decision not to recuse himself for an abuse of discretion. Jenkins v. Anton, 922 F.3d 1257, 1271 (11th Cir. 2019).  "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous."  F.T.C. v. Nat'l Urological Grp., Inc., 785 F.3d 477, 481 (11th Cir. 2015) (quotation marks omitted).

On appeal, the Plaintiffs make no mention of their other basis for recusal—that Judge Jones admitted and relied upon State Farm's allegedly fabricated documents during the summary judgment proceedings.  Thus, they have abandoned any challenge for recusal on that basis.

10

would entertain a significant doubt about the judge's impartiality.  Jenkins v. Anton, 922 F.3d 1257, 1271 (11th Cir. 2019).

Under either §§ 144 or 455, the nature of the alleged bias must be personal, rather than judicial.  United States v. Meester, 762 F.2d 867, 884 (11th Cir. 1985). In other words, the bias must stem from "extrajudicial sources," or "the judge's acts [must] demonstrate such pervasive bias and prejudice that it unfairly prejudices one of the parties."  United States v. Bailey, 175 F.3d 966, 968 (11th Cir. 1999) (quotation marks omitted).

The Plaintiffs have failed to demonstrate how District Court Judge Jones abused his discretion in this case, under either §§ 144 or 455.  Judge Jones's prior involvement in the underlying State Farm suit is not a personal, extrajudicial bias. See Christo, 223 F.3d at 1334 (providing that recusal is not required simply because the particular judge "presided over previous . . . civil trials involving the same parties"); see also Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994) (explaining that a judge's opinions formed based on facts or events occurring during present or past proceedings do not support recusal, unless those opinions reflect "a deep-seated favoritism or antagonism that would make fair judgment impossible").

Nor is the Plaintiffs' filing of a grievance against Judge Jones sufficient to warrant his recusal.  See In re Evergreen Sec., Ltd., 570 F.3d 1257, 1265 (11th Cir.

11

2009) ("The mere filing of a complaint of judicial misconduct is not grounds for recusal."). While the Plaintiffs claim that the grievance contained specific information about the M&B Attorneys' actions relevant to the contempt proceedings, they do not allege which information, if any, the grievance contained that was beyond or different from what was revealed to Judge Jones during the contempt proceedings (i.e., through the Plaintiffs' motion for contempt, the M&B Attorneys' response, and the parties' attached documents).

The Plaintiffs' motion alleged no further facts that would cause Judge Jones's impartiality to reasonably be questioned, that showed personal bias or prejudice, or that demonstrated he had personal knowledge of disputed evidentiary facts concerning the proceeding. See 28 U.S.C. §§ 144, 455. Accordingly, Judge Jones did not abuse his discretion in declining to recuse himself from the contempt proceedings.

### III. MOTION FOR CIVIL CONTEMPT

Next, the Plaintiffs argue that District Court Judge Jones abused his discretion, and denied them due process, when he denied their motion for contempt without ordering the M&B Attorneys to show cause.[5] The Plaintiffs assert that,

---

[5]This Court reviews for an abuse of discretion the district court's ruling on a motion for civil contempt. Nat'l Urological Grp., 785 F.3d at 481. This Court also reviews for an abuse of discretion a district court's interpretation of its own orders. In re Managed Care, 756 F.3d 1222, 1234 (11th Cir. 2014).

12

because they made a prima facie showing that the M&B Attorneys violated Judge

Hunt's October 25 oral order, the burden shifted to the Attorneys to show cause

that they did not violate the order.[6]

"Courts have the inherent power to enforce compliance with their orders

through civil contempt." U.S. Commodity Futures Trading Comm'n v. Escobio,

946 F.3d 1242, 1255 (11th Cir. 2020). Upon filing a motion for civil contempt, the

movants—here, the Plaintiffs—bear the initial burden of proving, by clear and

convincing evidence, the alleged contemnors' noncompliance with a prior court

order. Thomas v. Blue Cross & Blue Shield Ass'n, 594 F.3d 814, 821 (11th Cir.

2010). "The clear and convincing evidence must establish that: (1) the allegedly

violated order was valid and lawful; (2) the order was clear and unambiguous; and

(3) the alleged violator[s] had the ability to comply with the order." Ga. Power Co.

---

[6]The Plaintiffs contend that Judge Hunt entered ten "orders" during the October 25 hearing and that those orders were "suppressed" and "never entered [onto] the court [docket]." The Plaintiffs identify the ten "orders" in a chart they prepared. The Plaintiffs assert that the "records were tampered [with] in the [district] court record by recording only a partial order," which allowed the M&B Attorneys to argue "an alternative conclusion than what Judge Hunt [actually] ordered."

There is simply no record evidence supporting the Plaintiffs' claims of suppressed orders and transcript tampering, nor have they provided any such evidence. The transcript of the October 25, 2010 hearing is available on the district court docket, and there is no indication from the face of the transcript that it has been tampered with. Moreover, the only order by Judge Hunt that is relevant to this appeal—that the parties meet and attempt to reconcile—was an oral order that is sufficiently reflected in the transcript and in the hearing minutes. There is no indication that Judge Hunt made or entered a written order on this matter. Thus, there was no such written order to "suppress." The remaining alleged nine "orders" identified by the Plaintiffs were merely statements Judge Hunt made to the parties during the hearing in relation to its ultimate oral order, and each of those nine statements was included in the transcript of the hearing.

13

v. N.L.R.B., 484 F.3d 1288, 1291 (11th Cir. 2007) (emphasis omitted).  Once the

movants make a prima facie showing of a violation, the burden shifts to the alleged

contemnors—here, the M&B Attorneys—to produce evidence explaining their

noncompliance at a show cause hearing.  Thomas, 594 F.3d at 821.

To determine whether a party is in contempt of a district court's order, the

order is subject to reasonable interpretation and may not be expanded beyond the

meaning of its terms without notice and an opportunity to be heard.  Ga. Power

Co., 484 F.3d at 1291.  This Court construes any ambiguities or uncertainties in the

court order in the light most favorable to the party charged with contempt.  Id.  We

look not to the subjective beliefs or intent of the alleged contemnor in complying

with the subject order, but to whether in fact the alleged contemnor complied with

the order.  Id.

Here, the district court did not abuse its discretion in denying the Plaintiffs'

contempt motion.  See F.T.C. v. Nat'l Urological Grp., Inc., 785 F.3d 477, 481

(11th Cir. 2015).  As an initial matter, Judge Jones did not abuse his discretion in

construing Judge Hunt's October 25, 2010 oral order as an order "for the parties to

essentially make an attempt at reconciliation."  See In re Managed Care, 756 F.3d

1222, 1234 (11th Cir. 2014).  At the October 25 hearing, Judge Hunt stressed his

preference that the parties reconcile and ordered the parties to confer and attempt

to reconcile by the end of the week.  In fact, Judge Hunt instructed that he wanted

14

the parties to meet at the M&B Attorneys' office, talk for "at least an hour's time," "have this meeting," and "see if there isn't some way you can get along." Even the hearing minutes reflected that Judge Hunt's oral order was that the parties "make another attempt to reconcile their differences." Only if the parties were unable to come to a resolution were they to notify the court and was the court to take further action (i.e., grant the M&B Attorneys' motion to withdraw on the conditions stated in the Settlement Letter).

The Plaintiffs contend that Judge Hunt's October 25 oral order went beyond merely requiring them to reconcile, and rather required that either (a) the parties agree to a contingency fee arrangement in particular or (b) the M&B Attorneys withdraw and recover only $500 in out-of-pocket costs. However, the transcript of the October 25 hearing evidences that Judge Hunt's oral order was not this definitive.

While Judge Hunt did make one statement that the parties needed to "agree on contingency," he did so in the context of the parties' indications that they wished to reach a contingency fee agreement but had been unable to do so. This single statement cannot reasonably be construed as an order that the M&B Attorneys could only continue representation on a contingency basis, regardless of any subsequent agreement between the parties. Rather, the overall import of Judge Hunt's oral order was simply that the parties needed to meet "to see if there isn't

15

some way [they] c[ould] get along." In any event, we must construe any ambiguities or uncertainties in Judge Hunt's October 25 oral order in the light most favorable to the M&B Attorneys. See Ga. Power Co., 484 F.3d at 1291. Thus, to the extent there is any ambiguity, we read Judge Hunt's oral order as directing the parties to meet and attempt to reconcile as to the fee arrangement, not to require the M&B Attorneys to either agree to a contingency fee arrangement or withdraw with only $500 recompense.

Nor did Judge Jones abuse his discretion in determining that the M&B Attorneys did not violate Judge Hunt's October 25, 2010 oral order. The record evidences that, just three days after the October 25 hearing, the parties did meet and confer as to a fee agreement. While the parties did not agree to a contingency fee arrangement in particular, the M&B Attorneys proposed the Amendment to the parties' Attorney-Client Contract (proposing a flat rate for all work performed through October 27 and an hourly rate for work performed after that date), and the Plaintiffs signed and executed the Amendment on October 28, 2010. The Plaintiffs concede that they did in fact confer and agree to this fee arrangement on October 28, and they have never challenged the validity of the Amendment. Additionally, neither party returned to the district court by October 29, or anytime thereafter, to notify Judge Hunt that they had not come to a resolution. Rather, the M&B Attorneys withdrew their first motion to withdraw, further evidencing their

16

October 28 reconciliation.

Therefore, the record shows that the parties complied in fact with Judge Hunt's October 25 oral order "to essentially make an attempt at reconciliation." See id. And, as Judge Jones determined, the parties' post-reconciliation and post-Amendment breakdown in communication was no longer subject to the October 25 oral order, with which the parties had already complied.

Because the Plaintiffs failed to make a prima facie showing that the M&B Attorneys violated either Judge Hunt's October 25 oral order or any other order, the burden never shifted to the M&B Attorneys to explain their noncompliance at a show cause hearing. See Thomas, 594 F.3d at 821. Accordingly, Judge Jones did not abuse his discretion, or deprive the Plaintiffs of due process, in denying the Plaintiffs' contempt motion without issuing a show cause order.

## IV. CONCLUSION

Because the district court did not abuse its discretion in denying the Plaintiffs' motions to recuse and for contempt, we affirm.[7]

**AFFIRMED.**

---

[7] The M&B Attorneys' request for sanctions against the Plaintiffs, made only in passing in their merits brief and not as a separate motion, is denied. See Fed. R. App. P. 38 (providing that, upon a motion, this Court may award just damages and costs to the appellee if we determine that the appeal is frivolous); 11th Cir. R. 38-1 & I.O.P. (providing that motions for damages and costs pursuant to Rule 38 should be filed separately, not contained in an appellee's brief); Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 682 (11th Cir. 2014) (explaining that a party abandons an issue by referencing it only in passing or burying it within properly presented arguments).